**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

HELENE M. SMITH,

    Plaintiff,

v.                                        Case No. 3:18-cv-960-J-JRK

BLUE CROSS BLUE SHIELD OF SOUTH
CAROLINA and COMPANION BENEFIT
ALTERNATIVES, INC.,

    Defendants.

## O R D E R[1]

### I. Status

This cause came before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. No. 20; "Plaintiff's Motion") and Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 21; "Defendants' Motion"), both filed March 18, 2019. Plaintiff responded to Defendants' Motion on April 1, 2019. See Plaintiff's Memorandum in Opposition to Defendants' Dispositive Motion for Summary Judgment (Doc. No. 29). Defendants filed a response to Plaintiff's Motion on April 17, 2019. See Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (Doc. No. 30). Upon review, the Court determines that dismissal is appropriate and necessary because Blue Cross Blue Shield of South Carolina ("BCBS SC") and Companion Benefit Alternatives, Inc. ("CBA") are not proper defendants.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed December 6, 2018; Order of Reference (Doc. No. 11), filed December 7, 2018.

## II. Procedural History / Background

On August 8, 2018, Plaintiff commenced this action for wrongful denial of benefits under an employee welfare benefit plan ("Plan"),[2] pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). On October 8, 2018, Defendants filed their Answer and Affirmative Defenses (Doc. No. 6; "Answer").

In the Complaint, Plaintiff alleges she was denied her benefit claim for inpatient treatment for "detoxification" and depression. Complaint at 3 ¶¶ 11-12. Plaintiff seeks damages in "the amount of unpaid benefits, together with interest on amounts paid by [Plaintiff], and for the remainder of the bill for her care as yet unpaid for her inpatient admission . . . ." Id. at 5.

The Complaint alleges that the Plan Administrator was BCBS SC. Id. at 2 ¶ 7. In their Answer, Defendants deny this allegation, and they assert the Plan Administrator was Plaintiff's employer, Nelson Mullins Riley & Scarborough, LLP ("Nelson Mullins"). Answer at 2 ¶ 7. Defendants allege that BCBS SC was the Claims Administrator. Id. ¶ 12. As to CBA, both parties agree that CBA manages behavioral health benefit claims under the Plan. Complaint at 2 ¶ 8; Answer at 2 ¶ 8.

Defendants specifically deny that they are "the proper party defendants in connection with the action." Answer at 1 ¶ 1. Defendants also assert as an affirmative defense that "[a]n action seeking additional ERISA plan benefits is proper only against the Plan Administrator" and that "neither BCBS SC nor CBA [were] ERISA plan fiduciaries and neither [was] the Plan Administrator." Id. at 4. In another affirmative defense, Defendants

---

[2] The Plan's name is Group Medical Benefits Plan for the Employees of Nelson Mullins Riley & Scarborough, LLP. See CBA0239 (Doc. No. 23-1 at 241). (For ease of reference, citations to the administrative transcript are provided in two forms: the pagination of the administrative file (e.g., CBA0001) and the pagination assigned by the Court's electronic filing system (CM/ECF)).

assert that Plaintiff failed to "join a required party, the ERISA Plan Administrator, Nelson Mullins . . . ." Id. at 5.

Thereafter, the Motions were filed. On December 12, 2019, the Court entered an Order (Doc. No. 33) taking the Motions under advisement and noting that the parties failed to fully and directly address whether BCBS SC and CBA are proper defendants and if so, which standard of review applies. The Court observed as follows:

> If BCBS SC and CBA are the proper defendants in this action, then they had to have had "sufficient decisional control over the claim process that would qualify [them] as . . . plan administrator[s]." If this is the case, it likely follows that their authority was such that their decision should be reviewed under the arbitrary and capricious standard. Plaintiff's position that the de novo standard of review applies is puzzling because if she sued the correct parties, then the arbitrary and capricious standard would likely apply. Plaintiff must clarify her position regarding who the Plan Administrator is because this issue affects who the proper defendants are and the standard of review.
>
> If Nelson Mullins did not delegate to BCBS SC and CBA its full and final discretionary authority to make claims decisions, then the Plan Administrator and proper defendant is Nelson Mullins, and Plaintiff has failed to sue the correct party. (If this is the case, and had Nelson Mullins been sued, then the de novo standard of review would have likely applied.) Based on Defendants' failure to address their initial position that they are not proper parties, and their contention that the arbitrary and capricious standard applies, Defendants without explanation have apparently abandoned their position that they are not proper defendants.

Dec. 12, 2019 Order at 8-9 (alterations in original) (citations omitted).

The Court thus directed the parties to file memoranda addressing whether BCBS SC and CBA are proper defendants and if so, which standard of review applies. See id. at 2, 10. The Court permitted Plaintiff to file a reply to Defendants' forthcoming memorandum, if she wished to do so. See id. at 10.

Pursuant to the Order, Plaintiff filed a memorandum on December 27, 2019, and Defendants filed a responsive memorandum on January 10, 2020. See Plaintiff's

- 3 -

Memorandum Addressing the Court's Questions (Doc. No. 34; "Plaintiff's Memorandum" or "Pl.'s Mem."); Defendants' Memorandum in Response to Order of December 12, 2019 and Plaintiff's Memorandum of December 27, 2019 (Doc. No. 35; "Defendants' Memorandum" or "Defs.' Mem."). Plaintiff did not file a reply.

### III. Discussion

The relevant issue is whether BCBS SC and CBA are the proper defendants in this action. Initially, the undersigned summarizes the parties' arguments in this regard. Then, the applicable law and background facts are set out and the issue is addressed.[3]

### A. Parties' Arguments

Plaintiff maintains that BCBS SC and CBA are proper defendants. Pl.'s Mem. at 1. Plaintiff argues she "did not sue [BCBS SC] as a de facto plan administrator but instead as the named Plan Administrator." Id. at 2; see also id. at 8-9. According to Plaintiff, the Plan identifies BCBS SC as the Plan Administrator. Id. at 2. Plaintiff contends that Nelson Mullins is the "Plan Sponsor." Id. at 2-3.

In their Memorandum, Defendants assert that "Nelson Mullins is the Plan Administrator and the Plan Sponsor of the . . . Plan and is the only proper party defendant in this action for ERISA plan benefits." Defs.' Mem. at 5.[4] According to Defendants, "BCBS SC is the claims administrator/administrative services provider for the . . . Plan and is not

---

[3] Because BCBS SC and CBA are not proper defendants, the Court does not reach the merits of Plaintiff's underlying wrongful denial claim.

[4] Defendants explain that in their Motion they "elected to address the merits of Plaintiff's claim without briefing jurisdictional issues" because Nelson Mullins is "obligate[d] . . . to indemnify BCBS SC and CBA for any money damages (benefits) that might be awarded Plaintiff in this action, and because BCBS SC and CBA believe that the propriety of the benefit denial decision . . . should be decided based upon the relevant administrative record, the applicable . . . Plan provisions, and the same standard of judicial review regardless of whether Nelson Mullins or BCBS SC and CBA are named as defendants." Defs.' Mem. at 1-2 (citation omitted).

a proper party defendant." Id. Defendants state that they "recognize and agree with this Court that controlling . . . precedent does not permit a direct action against a claims administrator or a third[-]party administrative services provider in those cases where, as in this case, an employer is the ERISA plan administrator with ultimate discretion to review and reverse any and all claims denial decisions." Id. at 2 (citations omitted). As to Plaintiff's assertion that the Plan names BCBS SC as the Plan Administrator, Defendants recognize that "in one location in the . . . Plan, BCBS SC is identified in error as the Plan Administrator." Id. at 4 (citation omitted). Defendants point to a number of places in the Plan and in the Summary Plan Description ("SPD") where Nelson Mullins is identified as the Plan Administrator. See id. at 4-5. Lastly, Defendants state that instead of dismissing the case entirely, they "would prefer that Defendants be dismissed from the action and that Nelson Mullins, the Plan Administrator, be substituted in Defendants' place." Id. at 6.

**B. Applicable Law**

"The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (citation omitted); see also Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1334 (11th Cir. 2006); Griffin v. Lockheed Martin Corp., 157 F. Supp. 3d 1271, 1274 (N.D. Ga. 2015) (recognizing that "[a]n entity is a proper defendant under [29 U.S.C.] § 1132(a)(1)(B) only if it has the discretion to award the benefits at issue"), aff'd, 647 F. App'x 920 (11th Cir. 2016). This is because "a court order requiring the payment of benefits under ERISA 'must issue against a party capable of providing the relief requested.'" Griffin v. Suntrust Bank, Inc., 648 F. App'x 962, 965 (11th Cir. 2016) (quoting Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 908 (11th Cir. 1997)).

A plan's designation of the Plan Administrator is not dispositive of the issue. "Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001) (citation omitted). The key issue is whether the entity has "sufficient decisional control over the claim process that would qualify it as a plan administrator . . . ." Id.

Accordingly, "[a] de facto plan administrator – i. e. , one who assumes responsibility for or controls the provision of plan documents and information – can be a proper defendant." E.G. by & through R.G. v. Companion Benefit Alts., Inc., No. CV 18-0265-WS-MU, 2018 WL 4623653, at *3 (S.D. Ala. Sept. 26, 2018) (alteration in original) (citation omitted) (unpublished). Applying the above principles, the United States Court of Appeals for the Eleventh Circuit has found employers to be de facto plan administrators in a number of cases. See Hamilton, 244 F.3d at 824; Garren, 114 F.3d at 187; Rosen v. TRW, Inc., 979 F.2d 191, 193-94 (11th Cir. 1992). The Eleventh Circuit has observed, however, that "where a plaintiff has sought to hold a third-party administrative services provider liable [as a de facto plan administrator], rather than the employer, [the Court] ha[s] rejected the de facto plan administrator doctrine." Oliver v. Coca Cola Co., 497 F.3d 1181, 1194 (11th Cir. 2007) (citation omitted), reh'g granted, opinion vacated in part on other grounds, 506 F.3d 1316 (11th Cir. 2007), and adhered to in part on reh'g, 546 F.3d 1353 (11th Cir. 2008); see also E.G. by & through R.G., 2018 WL 4623653, at *4. In making this observation, the Eleventh Circuit cited Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288 (11th Cir. 1989). See Oliver, 497 F.3d at 1194. The Court specifically noted that in Baker, the

employer "reserved the right to review any and all claim denials." Oliver, 497 F.3d at 1194 (quoting Baker, 893 F.2d at 290).

A third-party administrative services provider "does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer . . . ." Baker, 893 F.2d at 290 (citation omitted). But, if a third-party administrator "has authority to interpret terms and make decisions regarding benefit claims and appeals, then [it] is a fiduciary to the plan, and thus, a proper party defendant in an ERISA action." Glenn v. Broadspire Servs., Inc., No. 8:06-CV-544-T-30TGW, 2006 WL 4990904, at *2 (M.D. Fla. June 15, 2006) (unpublished); see also Heffner, 443 F.3d at 1334 (finding that third-party administrative services provider "control[led] the plan" and was thus a proper defendant because it had "complete discretion to interpret and administer the provisions of the [p]lan" and its "administrative functions include[d] paying claims, determining medical necessity, etc.").

Accordingly, in cases in which the employer has delegated to a third-party administrative services provider its full discretion over benefit claims decisions, courts have found the third-party services provider to be a proper defendant, rather than the employer. See Woodruff v. Blue Cross & Blue Shield of Ala., No. 2:16-cv-00281-SGC, 2018 WL 571933, at *4-5 (N.D. Ala. Jan. 26, 2018) (unpublished) (granting plan's motion for judgment on the record and finding plan was not a proper party because claims administrator was delegated "both the discretionary authority and the responsibility to decide claims for medical benefits under the Plan" and the claims administrator's determinations were "final and binding"); Suntrust Bank, Inc., 648 F. App'x at 966 (11th Cir. 2016) (finding employer could not be held liable because it delegated to third-party

services provider its "full discretion to determine eligibility for benefits under the [p]lan and to interpret the terms of the [p]lan," as well as responsibility to "decide 'appeals of any adverse benefit determinations under the Plan'" (citation omitted)); Lockheed Martin Corp., 157 F. Supp. 3d at 1275 (granting employer's motion to dismiss because although employer was the designated plan administrator, it delegated to claims administrator "full and final authority to make claims decisions and decide appeals of those decisions," and employer "retained no authority in this respect"); Boyer v. J. A. Majors Co. Emp. Profit Sharing Plan, 481 F. Supp. 454, 457-58 (N.D. Ga. 1979) (granting employer's motion to dismiss because "responsibility for administration of the [p]lan" was vested on a committee and "there [was] no evidence that the [employer] controlled the Plan or had anything to do with its administration").

Additionally, in cases in which the third-party administrative services provider did not possess discretion to make final and binding decisions on benefit claims, courts have found that the third-party administrative services provider was an improper defendant. See Oliver, 497 F.3d at 1186, 1195 (finding claims administrator that had discretion to decide initial claims and first-level appeals was not a proper defendant because it did not have discretion to decide second-level appeals); Scarpulla v. Bayer Corp. Disability Plan, 514 F. Supp. 2d 1262, 1266, 1273 (N.D. Ala. 2007) (finding claims administrator was not a proper defendant because although it reviewed initial claims and interpreted the Plan, the employer retained "final discretionary authority to determine what benefits shall be paid under the Plan, to interpret Plan provisions, and to otherwise determine the merits of any appeal"); Wall v. Pennzoil-Quaker State Co., 358 F. Supp. 2d 1169, 1176 (S.D. Fla. 2004)

(finding claims administrator was not a proper defendant because it did not have discretion to decide second-level appeals).

**C. Background Facts**

The Plan identifies Nelson Mullins as the employer, and Nelson Mullins is referred to as "Employer" throughout the Plan. See CBA0239 (Doc. No. 23-1 at 241).[5] The Plan's Definitions section (Article I) provides the following relevant definitions. The Plan Administrator is defined as follows: "the entity charged with the administration of the Plan . . . . The Employer is the Plan Administrator of this Plan . . . ." CBA0189 (Doc. No. 23-1 at 191). The Claims Administrator is identified as BCBS SC. CBA0179 (Doc. No. 23-1 at 181). CBA is defined as an "independent [behavioral health] company that provides healthcare on behalf of [BCBS SC]" and that is "responsible for managing behavioral healthcare [s]ervices, including pre-certifying Mental Health and Substance Use Disorder Benefits for inpatient and outpatient [s]ervices." CBA0179 (Doc. No. 23-1 at 181). In another section (Article X, outlining the rights and protections afforded to each member of the Plan), the Plan identifies BCBS SC as the Plan Administrator. CBA0240 (Doc. No. 23-1 at 242); see CBA0238-40 (Doc. No. 23-1 at 240-42) (Article X).

For a healthcare service to be covered under the Plan, it must be: 1) medically necessary; 2) pre-authorized (when required by the Plan); 3) included in the Plan; and 4) not limited or excluded under the Plan. CBA0178 (Doc. No. 23-1 at 180). The Plan sets out the criteria required for a service to be medically necessary. See CBA0186 (Doc. No. 23-1 at 188). The Plan grants BCBS SC and CBA the "discretion" to determine whether a particular service meets such criteria. CBA0187 (Doc. No. 23-1 at 189).

---

[5] The parties do not dispute that Nelson Mullins is the employer.

- 9 -

In the section of the Plan setting out the appeal procedures, the Plan provides that BCBS SC "decide[s]" appeals of denials of "Pre-Service Claims" and "Post-Service Claims" and that Nelson Mullins "decide[s]" the appeals of denials of "Urgent Care Claims" and "Concurrent Care Claims." CBA0245 (Doc. No. 23-1 at 247). The same section later states that although Nelson Mullins "may retain [BCBS SC] to assist [Nelson Mullins] in making the determination on appeal," BCBS SC "is only acting in an advisory capacity and is not acting in a fiduciary capacity," and Nelson Mullins "at all times retains the right to make the final determination." CBA0247 (Doc. No. 23-1 at 249).

The SPD sets out the extent of Nelson Mullins's authority and ability to delegate that authority. Specifically, the SPD provides that Nelson Mullins has "to the fullest extent permitted by law, . . . the exclusive discretionary authority to determine all matters related to the [P]lan, including eligibility, coverage and benefits," as well as "all matters relating to the interpretation and operation of the [P]lan." Summary Plan Description (Doc. No. 25) at 59.[6] The SPD further states as follows:

> [Nelson Mullins] may delegate any of its duties and responsibility to one or more persons or entities. Such delegation of authority must be in writing and must identify the delegate and the scope of the delegated responsibilities. Decisions by the plan administrator, or any authorized delegate, will be conclusive and legally binding on all parties.

Id.

Nelson Mullins and BCBS SC entered into an Administrative Services Agreement ("ASA"), effective January 1, 2017, see CBA0020 (Doc. No. 23-1 at 22), whereby BCBS SC agrees to provide services for the processing of "timely submitted" claims, CBA0029

---

[6] The SPD is not part of the administrative transcript. Citations to the SPD follow the pagination of the SPD itself.

(Doc. No. 23-1 at 31). Specifically, the ASA provides that BCBS SC "shall determine the extent of the [b]enefits (if any) to which any [m]ember is entitled under the Plan . . . ." CBA0029 (Doc. No. 23-1 at 31). Under the ASA, Nelson Mullins "retains the sole discretion to determine whether a claim was timely submitted or whether the timely submission of a claim was reasonably possible." CBA0029 (Doc. No. 23-1 at 31).[7]

**D. Analysis**

The Court finds that the Plan designates Nelson Mullins as the Plan Administrator. Although one section of the Plan states that BCBS SC is the Plan Administrator, CBA0240 (Doc. No. 23-1 at 242), other provisions in the Plan and the SPD make it clear that the statement was a scrivener's error. Importantly, the Plan specifically defines Plan Administrator as the employer (Nelson Mullins), see CBA0189 (Doc. No. 23-1 at 191), and the Claims Administrator is defined as BCBS SC, see CBA0179 (Doc. No. 23-1 at 181). In other Plan provisions, Nelson Mullins is again identified as the Plan Administrator. See CBA0231 (Doc. No. 23-1 at 233) (providing, "<u>Employer as the Plan Administrator</u> shall promptly notify the Employee and each Alternate Recipient of the receipt of the Medical Child Support Order and the Claims Administrator's procedures for determining whether Medical Child Support Orders are Qualified Medical Child Support Orders" and "<u>Employer as the Plan Administrator</u> shall establish reasonable procedures to determine whether Medical Child Support Orders are Qualified Medical Child Support Orders and to administer the provision of Covered Expenses under such qualified orders" (emphasis

---

[7] In the ASA, Nelson Mullins is referred to as "Purchaser." See CBA0020 (Doc. No. 23-1 at 22).

added)). Moreover, the SPD also identifies Nelson Mullins as the Plan Administrator and BCBS SC as the third-party administrator. Summary Plan Description (Doc. No. 25) at 57.

Having found that Nelson Mullins is the named Plan Administrator, the Court now turns to whether Defendants possessed full and final discretionary authority to make claims decisions and control the administration of the Plan. For the reasons set out below, the undersigned finds that the plan documents and the ASA, when read as a whole, do not convey a clear, express grant of full and final discretionary authority to Defendants.

First, the Plan itself does not grant Defendants the authority to control the administration Plan or make final claim determinations. As noted, BCBS SC and CBA have the discretion to determine whether a healthcare service qualifies as medically necessary under the Plan, but medical necessity is just one of four requirements for a healthcare service to be covered under the Plan. See CBA0186-87 (Doc. No. 23-1 at 188-89). Moreover, in determining medical necessity, BCBS SC and CBA are bound by the Plan's criteria. See CBA0187 (Doc. No. 23-1 at 189). To the extent the Plan allows BCBS SC to assist Nelson Mullins in deciding appeals of denials of certain types of claims, the Plan states that BCBS SC is acting "only in an advisory capacity" and that Nelson Mullins "retains the right to make the final determination." CBA0247 (Doc. No. 23-1 at 249).

Second, the ASA does not delegate to Defendants the final discretionary authority over claims decisions or the Plan. Although the ASA vests BCBS SC with the authority to determine whether and to what extent a member is entitled to benefits, and the SPD states that any decision by Nelson Mullins or "any authorized delegate" will be final and binding, Summary Plan Description (Doc. No. 25) at 59, the ASA does not provide that BCBS SC's determinations are final and not subject to review by Nelson Mullins.

In cases in which a claims administrator was found to have been delegated full and final authority to decide benefit claims, the document delegating such authority explicitly provided that such authority was full and final. See Woodruff, 2018 WL 571933, at *1 (plan providing that claims administrator was delegated "discretionary responsibility and authority to determine benefit claims under the Plan" and that those determinations would be "final and binding on [the members]"); Lockheed Martin Corp., 157 F. Supp. 3d at 1275 (summary plan description providing that claims administrator's "decision[s] shall be final and binding to the full extent permitted by law" (emphasis omitted)); Boyer, 481 F. Supp. at 458 (plan document providing that all decisions of the claims administrator regarding any disputes and questions about the meaning, interpretation, or application of the plan "shall be final"). This is not the case here.

Indeed, other provisions in the ASA show that BCBS SC's claim determinations are not final. For example, the ASA provides that Nelson Mullins retains the right to "withhold payment" of benefits. See CBA0029 (Doc. No. 23-1 at 31) (providing that BCBS SC "shall not pay any claim if . . . [Nelson Mullins] has directed BCBS[ SC] to withhold payment"). The ASA also expressly reserves to Nelson Mullins the ultimate authority to interpret the Plan and states that BCBS SC is bound by Nelson Mullins's interpretation. See CBA0029 (Doc. No. 23-1 at 31) (providing that if Nelson Mullins "determines that BCBS[ SC] has misinterpreted the Plan . . . and so informs BCBS[ SC] in writing within two (2) days of making such determination, BCBS[ SC] shall begin processing and paying claims in accordance with [Nelson Mullins]'s interpretation as set forth in such writing thirty (30) days after receipt of such notice"); see also RMP Enterprises LLC v. Connecticut Gen. Life Ins. Co., No. 9:18-CV-80171, 2018 WL 2973389, at *4 (S.D. Fla. June 13, 2018) (unpublished)

(granting motion to dismiss finding that the plaintiff "fail[ed] to allege that [the d]efendants control the administration of the [p]lans at issue" and noting that the third-party claims administrator could not "lawfully interpret the provisions of the [p]lans"), appeal dismissed, No. 18-15294-GG, 2019 WL 3021231 (11th Cir. Apr. 8, 2019). Further, the ASA makes clear that Nelson Mullins "retains all authority, responsibility, and liability for its . . . Plan and its operation, and BCBS[ SC] is only authorized to act on behalf of [Nelson Mullins] as expressly stated in [the ASA] or the Plan . . . or as may be mutually agreed to in writing by BCBS[ SC] and [Nelson Mullins]." CBA0026 (Doc. No. 23-1 at 28). The Plan also expressly provides that "BCBS[ SC] . . . is not and shall not be designated or deemed a Plan Administrator, sponsor or fiduciary of any kind with respect to the Plan . . . for the purposes of any applicable federal or state law." CBA0043 (Doc. No. 23-1 at 45).

Other responsibilities expressly reserved to Nelson Mullins that evidence its control over the Plan and that are not explicitly delegated to BCBS SC in the ASA include the following. Nelson Mullins has the responsibility of providing BCBS SC with a "Benefits Checklist" in accordance with which BCBS SC must administer the Plan. CBA0178 (Doc. No. 23-1 at 180). The Plan also gives Nelson Mullins the authority to reinstate a terminated member in cases in which the member's benefits are terminated for failure to pay premiums. See CBA0226 (Doc. No. 23-1 at 228) (providing that "[p]remiums received after termination will not automatically reinstate the [member] in participation under the [Plan] absent written agreement by [Nelson Mullins]"). Under the ASA, BCBS SC can make determinations as to timely claims only, and Nelson Mullins determines whether a claim is timely. CBA0029 (Doc. No. 23-1 at 31).

Third, it is also important to note the plan documents and the ASA reflect that Nelson Mullins has assumed all liability for claims arising out of the Plan. Specifically, the Plan provides that Nelson Mullins "assumes all financial risk and obligation with respect to claims" and that BCBS SC "provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims." CBA0248 (Doc. No. 23-1 at 250). The ASA states that BCBS SC "shall have no liability to a [m]ember or [Nelson Mullins] . . . for withholding payments as directed by [Nelson Mullins] and for alleged or actual misinterpretations of the Plan . . . or for claims that were denied prior to [Nelson Mullins's] determination and written notification to BCBS[ SC]." CBA0029 (Doc. No. 23-1 at 31). The SPD identifies Nelson Mullins as the "agent for service of legal process." Summary Plan Description (Doc. No. 25) at 57 (capitalization omitted).

Based on the foregoing, this case is more akin to those cases in which the employer does "no more than 'rent' the claims processing department of [the third-party claims administrator] to review claims and determine the amount payable 'in accordance with the terms and conditions of the Plan.'" Baker, 893 F.2d at 290. BCBS SC did not become the Plan Administrator "simply by performing administrative functions and claims processing within a framework of rules established by [Nelson Mullins]." Id.[8]

This matter is thus due to be dismissed without prejudice because Plaintiff has failed to sue the proper defendant. In light of the procedural posture of the case, the Court

---

[8] Although here, unlike in Baker, BCBS SC assists Nelson Mullins in deciding denials of some appeals, as noted above, the Plan makes clear that BCBS SC is acting in an "advisory capacity and is not acting in a fiduciary capacity" and that Nelson Mullins "at all times retains the right to make the final determination." CBA0247 (Doc. No. 23-1 at 249).

declines to follow Defendants' suggestion that Nelson Mullins be substituted for BCBS SC and CBA under Rule 21, Federal Rules of Civil Procedure.[9]

This action was initiated in August 2018 and the Motions have been fully briefed. Nelson Mullins would be prejudiced if it were substituted as a defendant at this juncture as it has not had an opportunity to respond to Plaintiff's Complaint or Plaintiff's Motion. This is not a misnomer case in which the plaintiff has sued the right party by the wrong name and the (correct) party has been actively participating in the litigation. See, e.g., Reeves v. Yeager, No. 3:06-CV-0054-JTC-AJB, 2007 WL 9653029, *2-3 (N.D. Ga. Dec. 10, 2007) (unpublished), report and recommendation adopted, No. 3:06-CV-54-JTC, 2008 WL 11337991 (N.D. Ga. Feb. 6, 2008) (unpublished), aff'd, 298 F. App'x 878 (11th Cir. 2008); see also Pears v. Mobile Cty., 645 F. Supp. 2d 1062, 1082, 1088 (S.D. Ala. 2009) (allowing Rule 15 amendment in misnomer case).

In comparison, the prejudice to Plaintiff if the Court dismissed this action would be minimal. As the dismissal is without prejudice, Plaintiff may initiate another action against the proper defendant. The statute of limitations for Plaintiff's claim began to run on or around December 15, 2017, when Plaintiff was notified of the denial of her claim on appeal.

---

[9] One court observed as follows:

"[T]here is a long-standing disagreement among courts . . . over whether Rule 21 permits substitution. Reasoning that Rule 21 never mentions the word and Rule 25 does, some courts have held that Rule 21 does not authorize substitution." Brown v. Anselme (In re Polo Builders, Inc.), 374 B.R. 638, 643 (Bankr. N.D. Ill. 2007). The no substitution view, however, "has been criticized as an unduly narrow restriction of Rule 21," Nat'l Maritime Union of Am. v. Curran, 87 F. Supp. 423, 426 (D. N.Y. 1949), and many courts have taken the opposite view. See, e.g., Mullaney v. Anderson, 342 U.S. 415, 416-17 (1952); Bavido v. Apfel, 215 F.3d 743, 747 n.3 (7th Cir. 2000); Walker v. Providence Journal Co., 493 F.2d 82, 86 n.9 (1st Cir. 1974).

Blaszkowski v. Natura Pet Prod., Inc., No. 07-21221-CIV, 2008 WL 11408621, at *4 n.4 (S.D. Fla. Oct. 8, 2008) (unpublished).

Complaint at 4 ¶ 18; see Nankivil v. Lockheed Martin Corp., No. 3:02-cv-512-J-21-TEM, 2003 WL 25568817, at *5 (M.D. Fla. Mar. 7, 2003) (unpublished). As ERISA actions have a five-year statute of limitations in Florida, the statute of limitations will not run until 2022. See Harrison v. Digital Health Plan, 183 F.3d 1235, 1241 (11th Cir. 1999) (finding that ERISA actions are governed by the applicable state statute of limitations for breach of contract actions); Fla. Stat § 95.11(2)(b) (providing a five-year statute of limitations for "a legal or equitable action on a contract, obligation, or liability founded on a written instrument . . .").

Had Defendants filed a motion asking the Court to substitute Nelson Mullins for Defendants at an earlier stage in the proceedings, the Court could have considered granting such relief. Defendants' suggestion in their memorandum at this juncture is not the appropriate way to seek such a substitution,[10] nor is it timely.

### IV. Conclusion

Based on the foregoing, the Court finds that Plaintiff has sued the wrong parties and that Nelson Mullins would suffer prejudice if it were substituted for Defendants at this juncture. Accordingly, it is

**ORDERED**:

1. This case is **DISMISSED without prejudice**.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 20) and Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 21) are **deemed MOOT**.

---

[10] A request for affirmative relief, such as a request to substitute a party, "must be made by motion." Fed. R. Civ. P. 7(b).

3. The Clerk of the Court is directed to close the file and terminate all pending motions.

**DONE AND ORDERED** in Jacksonville, Florida on March 18, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record